ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. STERLING.  (No. 1436.)

(Court of Civil Appeals of Texas. Texarkana. May 7, 1915. Rehearing Denied June 24, 1915.)

1. APPEAL AND ERROR ⟜999—REVIEW—VERDICT AGAINST EVIDENCE—REVERSAL.

The appellate court may set aside the verdict and award new trial when the evidence is of force and character to make such action necessary and proper.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3921, 3923, 3924; Dec. Dig. ⟜999.]

2. CARRIERS ⟜318—CARRIAGE OF PASSENGERS—INJURIES—VERDICT — SUFFICIENCY OF EVIDENCE.

In a passenger's action against a railroad for injuries caused by derailment of the train, evidence that the producing cause of the injury was the road's negligence *held* insufficient to support verdict for plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. ⟜318.]

Appeal from District Court, Titus County; W. T. Armistead, Judge.

Action by H. L. Sterling against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed, and cause remanded for new trial.

See, also, 175 S. W. 1128.

Glass, Estes, King & Burford of Texarkana, for appellant. Randell & Randell, of Sherman, for appellee.

LEVY, J. The action is by appellee, a locomotive fireman, for damages for personal injuries claimed to have been received by him in the derailment of one of appellant's passenger trains. The derailment occurred on the main line track, at the point of a curve in the track, about 1½ miles from Coppell, Tex., on August 31, 1913, about 10 o'clock at night. The petition averred as grounds of negligence running the train at a high and dangerous rate of speed, and maintenance of a defective track, bad roadbed, and rotten ties at the point of the wreck. The defendant traversed the allegations of negligence, and pleaded as a defense that the derailment was solely caused by the malicious act of some person not under its control in removing the spikes, bolts, and angle bars from one of the rails in the track just shortly before the wreck.

[1, 2] The twenty-fifth and twenty-seventh assignments of error assail special findings of the jury in respect to the cause of the derailment, as being against the great weight and preponderance of the evidence. After considering the entire evidence, as disclosed by the present statement of facts, it is believed that the various circumstances relied on to show the probable cause of the derailment so strongly go to show that the real producing cause of the injury was not through the negligence of appellant as to fairly and reasonably lead to the opinion that the verdict of the jury in that respect is against such preponderance of the evidence as to warrant and make proper the action of setting aside the verdict and awarding a new trial in the case. It is within the power of the court so to do when in its opinion the evidence is of that force and character as to make that action necessary and proper. Choate v. Railway Co., 91 Tex. 406, 44 S. W. 69. It is undertaken only to briefly state the portions of the evidence that are persuasive of the ruling. The derailment occurred at a place where there is about a four-degree curve in the track. The engine ran about three rails' length on the ties, and it and the baggage car turned over on the inside of the curve. The mail car and the smoking car were turned crossways of the track, and the front trucks of the chair car got off one of the rails, and the rest of the train remained on the track. The appellee testified:

"The first thing that attracted my attention that there was going to be a wreck was just a great crash and a surge to one side, and then I could not tell hardly what happened. * * * There was a great crashing noise and a smash."

The engineer testified:

"We were drifting along, and the first intimation I had that there was anything wrong, I felt that the engine was off the track. I applied the air brake full in the emergency, and tried to jump out of the window, and that is about the last I remember. I did not feel the engine rocking or swinging before I felt it was off the track. I did not know that anything was wrong before the engine got off the track, and I did not notice anything unusual about the engine or the movement of the engine before it got off the track."

The general roadmaster and the extra gang foreman of appellant were on the train at the time, and made an examination of the track and situations on the ground very shortly after the accident. The foreman testified that he had never seen a derailment go off on the inside of a curve, as this, and that he got a lantern to see what caused the derailment and how the engine got off so quickly. The roadmaster also made an examination. The foreman stated, in substance, that the front wheels of the chair car were off

one rail and the others were on the rails, and the rail where the wheel was off was disconnected and the end was pushed out towards the middle of the track about 10 inches or 1 foot. The rail on the opposite side of the track was not disconnected. He did not see any marks on the ties back from where this rail was disconnected, but found signs or indications on the ties from the disconnected rail in the direction where the engine lay. He further said he found one of the plates off the disconnected rail lying on the inside of the track and one on the outside of the track, and found a bolt lying on the tie and one between the ties and one next to the plate in the center of the track, and found five spikes pulled out of the ties on the inside of the rail. He examined the bolts at the disconnected joint, and they were not broken in any way, and the angle bars were not broken, and the nuts were bright and had four corners to them and had marks on them like marks made by a wrench. It was his opinion that if the train had dislocated the rail, it would have broken the nuts, bolts, and angle bars, and that it would have been impossible for the train to dislocate the joint as it was. The roadmaster's evidence, without going into details, is, in substance, the same. He stated he found the inside rail, where the chair car was, dislocated, while the opposite outside rail was in position and not disturbed, and there were wheel marks on the ties after they left the disconnected rail, and that the loose end was toward the center of the track, and that the disconnected rail was about 150 feet from where the engine was lying. The roadmaster at once telephoned the sheriff of Dallas county, who got there in company with a deputy at about 3 or 4 o'clock a. m. It was shown that no change was made in any of the conditions before the arrival of the sheriff. The sheriff testified substantially that he examined the situation and found that bolts had been taken out of the fishplates or angle bars, and found on the ground the bolts where the rails had come together, and found spikes out of the ties for seven ties on the outside of the rail and for nine ties on the inside of the rail, and the loosened rail had sprung back in a straight position, leaving a gap between the rails; that the rail was not entirely removed, but the fastenings had been removed that held it to the rail west of it, and the spikes pulled, leaving the west end of the rail loose, but the east end intact; that the rail on the north or west of the loosened rail was intact. The rail on the opposite side was intact and undisturbed. The deputy with the sheriff found a claw bar outside of the right of way fence, in the weeds. It was a Missouri, Kansas & Texas claw bar, and had a Missouri, Kansas & Texas mark on it. The sheriff says:

"We took this claw bar and went back to the track, and there was an impression left on the ties, and we placed the heel of this bar on those impressions, and they fit. We also placed a spike back in the hole, and there was an impression on that bar, that is, a black place, and there was also one on the tie, and they fit absolutely. We made the experiment with reference to the disconnected rail right at it."

He also described the condition of the track and rails, and the wheel marks on the ties. Shortly afterwards a Missouri, Kansas & Texas wrench, about 2 feet long, was found about 10 feet from the right of way fence and just south of the point of the wreck. The testimony of the conductor, the section foreman, and the extra gang foreman goes to show, as stated by the other witnesses, the displacement and disconnection of the rail and the physical indications that the engine wheels first left the track at that point. An hour and one-half before this passenger train arrived at the point of derailment a freight train safely passed the same track at the speed of about 25 miles an hour. At 6:45 p. m. previous to the accident the section foreman passed over the track, and found it all right, he says. There was further proof by appellant that the roadbed had been renewed and put in good condition of alignment, and new ties had been put in same about two months previous. Appellee offered evidence tending to show that the track before the wreck appeared in a run-down condition and contained some bad ties and low joints, and that the train at the time was running at the rate of speed of 40 to 45 miles an hour. In view of the disposition of the appeal it is not thought proper to discuss or comment upon the evidential significance or allowable inferences of the various circumstances.

The judgment is reversed, and the cause remanded for another trial.